DEIRDRE A. GORMAN (#3651)
Attorney for Defendant
205 26th Street, Suite 32
Bamberger Square Building
Ogden, Utah 84401
Telephone: (801) 394-9700
dagorman@qwestoffice.net


## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | / | **DEFENDANT'S SENTENCING MEMORANDUM** |
| Plaintiff, | / | |
| vs. | / | |
| DARIN FRONK CLARK, | / | |
| Defendant. | / | Case No. 1:11-CR-00087TC |

COMES NOW DARIN FRONK CLARK, by and through his attorney of record, DEIRDRE A. GORMAN, and submits this Memorandum in anticipation of his Sentencing which is to take place on February 11, 2013.

Mr. Clark does not dispute that this Court is bound by the statutory provisions of § 18 U.S.C. §2251 (a) wherein a sentence of 15 years custody is mandated.

However, the purpose of this Sentencing Memorandum is to record the chronic medical conditions and the history of such from which Mr. Clark suffers. It is hoped that the Court will be further educated about Mr. Clark's difficulties, and will entertain an initial recommendation that he be evaluated at a federal medical facility before he is designated.

This pleading is also filed for the benefit of the Federal Bureau of Prisons (FBOP) in anticipation of the medical care that Mr. Clark will need during his stay within their facilities.

To that end, it is imperative that Mr. Clark's preexisting medical conditions be documented so that his ongoing treatment will continue. This documentation evidences that medical treatment is necessary because it has previously been diagnosed and treatment plans presently prescribed by Mr. Clark's various physicians.

Last, Mr. Clark requests that this Sentencing Memorandum be made part of the Presentence Report and File, as it is vital that the attachments hereto become part of Mr. Clark's official FBOP file.

<u>SERIOUS MEDICAL CONDITIONS</u>

Darin Clark, 46 years old this year,  reaches mid-age accompanied with six serious medical conditions for which he has been diagnosed and is currently being treated.

     a.    <u>Medical history of three previous back surgeries:</u>

In 1984, at 17 years of age while a senior at Bear River High School, Darin began to experience intermittent, but severe back pain over a span of three or four months. This pain, both nerve and muscle, worsened, then became continuous for a period of five to six weeks. Darin's parents took him to the doctor, but he did not get any relief from the pain by way of medication or therapy. Even after several consultations with his family physician, his condition was not diagnosed nor the idiopathy of the pain discovered.

Darin woke up one morning, literally paralyzed, and being unable to feel anything from the middle of his chest down. He not only could not feel his legs, but he couldn't move them either. His parents carried him to the car and drove him to the doctor's office. His family physician immediately sent him by ambulance to McKay-Dee Hospital in Ogden, Utah, and within an hour of his arrival

he was in surgery.

An orthopedic specialist, Dr. Glen Church, removed a Giant Cell tumor from Darin's spine. Luckily the tumor was benign, but it did subject Darin to major back surgery at a very young and vulnerable age due to growth plate considerations.

The next year, six or seven months after the first surgery, the Giant Cell tumor had returned. Darin went back to surgery with Dr. Church for its second removal. This time however, surgery was more complicated due to large portions of his spine having been eroded by the tumor. As a result, Darin was in a full chest back brace for approximately one year. When the brace was removed, he had to learn to walk all over again.

During the time he was in the back brace, Darin underwent radiation therapy five days a week, for three weeks. But after weeks of radiation, his spine had become so weak that it was determined that Darin should submit to yet another surgery; this time Harrington rods would be placed in his back in hope of strengthening it.  As such, shortly after his eighteenth birthday, Dr. Harold Dunn, an orthopedic specialist at the University of Utah, inserted two Harrington rods in Darin's back during hours-long surgery. These rods span the length of his rib cage, and they continue to preclude him from lifting anything weighing over 50 pounds.

To this day, Darin has pain in his lower back that radiates through his thoracic spine and into his neck on a daily basis. Presently he has degenerative changes in his spine, both cervical and lumbar, with associate severe pain.

Due to the records at McKay Dee Hospital and the University of Utah Hospital being over seven (7) years old, they were archived. When they become available, this Memorandum will be

supplemented.  However, *Attachment #1* is a 1992 radiology report from Logan Regional Hospital that evidences the Harrington rods, as follows:

> Incidental note is made of Harrington rods which span the upper thoracic to the lower thoracic spine. The rods are threaded and have been placed in a manner to create compressive forces over the axial spine.

b.     Migraine Headaches

When Darin reached his early twenties he began experiencing migraine headaches. His migraines became so severe at times that they interfered with his vision, and also impacted his hearing.

Over the years, Darin has consulted with many health care providers about his migraines because they have become so incapacitating. To try to determine their source, he has submitted to many MRI's and CT scans. Although providers have been unable to pinpoint the source of the headaches, many doctors believe that these headaches may be a result of the Harrington rods.

Whatever the source, twenty years later these migraines occur with more frequency and have intensified in pain.

Darin has migraines at least three times a month and sometimes as many as four a week, where he can do nothing but lay very still, in a dark room and wait for them to subside which may take any where from eight to twelve hours.

Even narcotic pain medication does not relieve Darin's pain. In fact, Dr. David Bedel, a physician in Logan, Utah who specializes in pain management, has prescribed Loratab, and as many as three times a day. Unfortunately, Loratab no longer provides any relief, most likely due to Darin becoming immune to its effects. Presently Darin is prescribed 800 milligrams of Ibuprofen, which

he takes on an "as needed" basis. Still, all he can do is take the medication and "wait" the migraine out.

*Attachment #2* is a 1998 radiology report from Logan Regional hospital resulting from a consultation due to Darin's migraines.

    c.    <u>Knee Pain - probable torn meniscus</u>

Early in 1992 Darin began experience pain in his knees. By January of 2009, his knee pain was excruciating, especially upon standing from a sitting or lying down position. Now his pain has progressed to the point that his legs shake uncontrollably when walking down stairs.

Darin has been treating with Dr. Marlowe Goble who is with the Perry Clinic, in Perry, Utah. As per Dr. Goble's orders, he has been attending physical therapy sessions at Mountain West Physical Therapy for the last several months.

Like his predicament with his migraines, none of the pain medication he has been prescribed has relieved his knee pain. Also, Darin has begun to experience swelling in his knees, which on occasion radiates down from his knees into his ankles. Dr. Thomas Mathews, Darin's family physician has noted that due to his pain knee condition, Darin's mobility is decreased, as well as his ability to be active.

*Attachment #3* is a prescription note from Dr. Goble evidencing he believes Darin has a torn meniscus and needs an MRI; and then perhaps [treatment would be] an injection or even surgery. The attachment is a chart note indicating that Darin suffers from "a chondromalacia patella with fibrillation of both femoropatella joints."

   d.      Gastroesophageal Reflux Disease (GERD)-Barrett's Syndrome

   Because of his continuing abdominal pain and unrelenting heart burn, Darin underwent an

esophagogastroduodenoscopy (EGD) procedure, on an outpatient basis at the Logan Regional

Hospital in April of 2004. As a result of this testing he was diagnosed by Dr. Dirk Davis with

gastroesophageal Reflux Disease (GERD), possible Barrett's Syndrome and a small Hiatal hernia.

   GERD is a digestive disorder that affects the lower esophageal sphincter which is the ring

of muscle between the esophagus and stomach. The symptoms are heartburn or acid indigestion,

which is due to the reflux, or flow back from the stomach to the esophagus.

   Barrett's Syndrome is a disorder of the lower esophagus marked by an ulcer-like lesion due

to chronic irritation of the esophagus by gastric reflux of acid indigestion. As such, by Darin

suffering from GERD, Barrett's Syndrome resulted. Barrett's cannot be totally cured, and

unfortunately, is a precursor to cancer of the esophagus.

   For this condition Darin has been proscribed Prilosec which he takes it on a daily basis.

   *Attachment #4* compiles the EGD diagnostic results of testing from Logan Regional Medical

Center in April of 2004.

   e.      Sensorineural Hearing Loss-Bilaterally

   Darin began to experience problems with his hearing approximately fifteen (15) years ago.

After consulting an audiologist, it was determined that he had a 50% hearing loss, which is

significant because it results in difficulty in hearing sounds and speech in any environment.  Thus,

he began wearing hearing aids about twelve (12) years ago.

Darin's hearing aids were last replaced in 2007. Presently, even with his hearing aids, he has difficulty understanding speech when there is background noise, multiple speakers, or when a speaker is turned away from him.

Because it was recommended by his audiologist, Dr. Niki L Barwick that he obtain new hearing aids in light of the old pair's lack of power, together with new features being available, his parents have helped him with the $6500.00 purchase price. Darin is now awaiting their delivery. When the hearing aids arrive he will need a consultation with Dr. Barwick to have them fitted or tuned to his particular hearing needs.

It is undersigned counsel's belief that the FBOP will not maintain Darin's hearing aids, and it is even more unlikely he will never be fitted with new ones at BOP's expense. As such, it is imperative that Darin be able to pay for his new pair, receive them, and have them "tuned" before he is enters into FBOP custody. If Darin does not receive them before his incarceration, it is unlikely that he will be allowed them even if sent to him by way of US Mail while he is in custody.

*Attachment #5* is a narrative, as well as testing results from Dr. Barwick's findings.

f.   <u>High Cholesterol</u>

Darin suffers from high cholesterol. A recent blood test indicated that his cholesterol is 266, and his triglycerides 409.

National research groups have shown an increased risk of developing heart disease when cholesterol values exceed 200.

*Attachment #6* are 2012 laboratory results from blood work performed at Brigham City Community Hospital.

g.      Summation of Dr. Thomas M. Matthews, M.D.

Dr. Thomas M. Matthews, M.D., of Brigham Medical Clinic, Brigham City, Utah is Darin's treating physician, whose correspondence is *Attachment #7*.  Therein, Dr. Mathews notes:

a)      Darin suffers from chronic pain in his knees and feet and is experiencing swelling of his ankles and knees. He has been prescribed Naprosin, an anti-inflammatory for this problem, and has also been prescribed Prednisone.

b)      Darin suffers from GERD and he has been prescribed Simbastatin for this diagnosis.

c)      Darin suffers from pre-diabetes.

d)      Darin suffers from severe migraine headaches that are at times incapacitating, and often times occur twice a week. These migraines cause him central blindness, and decreases the hearing in his ears further. He is taking Ibuprofen for the pain.

## CONCLUSION

It is likely that Mr. Clark will not receive adequate medical treatment during his years-long incarceration at the FBOP. This is very likely indeed, even in consideration of his documented medical history and continuing characteristics of ill health. As such, Mr. Clark feels it imperative that his medical history be documented as fully as possible in light of his diagnosed chronic illnesses, in hope that the FBOP will consider such medical history that has *already been diagnosed and treated* prior to him coming into their custody.

RESPECTFULLY SUBMITTED this  1st  day of February, 2013.

                          */s Deirdre A. Gorman*                           
                          DEIRDRE A. GORMAN
                          Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on <u>February 2, 2013</u>, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Carol A. Dain
Assistant United States Attorney
carol.dain@usdoj.gov

/s/ S. Mumford
Secretary