IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DARIN FRONK CLARK,<br><br>Defendant. | ORDER AND MEMORANDUM DECISION DENYING MOTION FOR COMPASSIONATE RELEASE<br><br>Case No. 1:11-CV-87-TC |

Prisoner Darin Fronk Clark moves this court for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), asking the court to reduce his fifteen-year sentence to time served or to order that he spend the remainder of his sentence in home confinement. To date, he has served approximately seven years of that sentence. He bases his motion on fear that his health is seriously threatened because the COVID-19 virus has spread to the prison where he is housed and that his medical condition puts him at an unacceptable risk of serious physical harm or death.

Given the record before the court, Mr. Clark has satisfied the statute's "extraordinary and compelling reasons" criteria, but even so, the court finds that the balance of factors set forth in 18 U.S.C. §§ 3142 and 3553 does not warrant his release. Accordingly, his motion is denied.

## FRAMEWORK FOR COMPASSIONATE RELEASE ANALYSIS

Mr. Clark brings his motion under 18 U.S.C. § 3582, as amended by the First Step Act[1]

---

[1] Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

1

(often referred to as the compassionate release statute). According to the statute, the court "may reduce the term of imprisonment… after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that … extraordinary and compelling reasons warrant such reduction ... and that such a reduction is consistent with applicable policy statements by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The factors under 18 U.S.C. § 3553(a) include the nature of the crime, the defendant's characteristics and history, the danger to the public, and the sentencing range.

Before Congress passed the First Step Act, only the Bureau of Prisons (BOP) could bring a motion under § 3582 requesting that the court reduce a prisoner's sentence. Now the court may consider the issue either upon a motion from the BOP or "upon motion of the defendant after the defendant has fully exhausted all administrative rights" with the BOP. Id. § 3582(c)(1)(A) (emphasis added). If the BOP has not filed a motion on the defendant's behalf, the defendant, to be eligible for the court's consideration of his motion for release under Act, must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" Id.

As noted above, the statute requires that a sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission[.]" Id. That phrase has given rise to disagreement about the court's discretion to define "extraordinary and compelling reasons."

The statute does not define "extraordinary and compelling reasons." But the United States Sentencing Commission (USSC) defined it before Congress passed the First Step Act, when Congress mandated that the USSC, "in promulgating general policy statements regarding

2

the sentencing modification provisions in section 3582(c)(1)(A) of title 18, <u>shall describe what should be considered extraordinary and compelling reasons</u> for sentence reduction, including the criteria to be applied <u>and a list of specific examples</u>…." 28 U.S.C. § 994(t) (emphasis added).

Following the mandate, the USSC, in the United States Sentencing Guidelines (USSG), issued that policy statement in USSG 1B1.13, which describes the circumstances allowing a court, upon motion by the BOP, to reduce a defendant's term of imprisonment. The Policy Statement requires a finding that "[e]xtraordinary and compelling reasons warrant the reduction" or that "the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned[.]" USSG 1B1.13(1)(A)–(1)(B). The Policy Statement also calls for a conclusion that "[t]he defendant is not a danger to the safety of any other person in the community, as provided in 18 U.S.C. § 3142(g)[.]" USSG 1B1.13(2). And, along similar lines, the Policy Statement requires the court to balance the § 3553(a) factors.

In the Commentary Application Notes, the USSC defines "extraordinary and compelling reasons" in terms of the defendant's (A) medical condition,[2] (B) advanced age,[3] (C) family circumstances,[4] or (D) "Other Reasons." USSG 1B1.13 Commentary Application Notes 1(A)-

---

[2] The "Medical Condition" category applies when the defendant is (1) "suffering from a terminal illness," (2) "suffering a serious physical or medical condition," (3) suffering a serious functional cognitive impairment," or (4) "experiencing deteriorating physical or mental health because of the aging process," and the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG 1B1.13 Commentary Application Note 1(A)(i)-(ii).
[3] The "Age" category requires that "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." USSG 1B1.13 Commentary Application Note 1(B).
[4] "Family Circumstances" consist of "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children," or "(ii) The incapacitation of the defendant's spouse

(D). The "Other Reasons" catch-all provision simply says, "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." USSG 1B1.13 Commentary Application Note 1(D).

The Policy Statement has not been amended since the First Step Act was passed, so the USSC has not yet weighed in on the change. Still, the United States, in its opposition to Mr. Clark's motion, relies on the Policy Statement, arguing that it is controlling even when the defendant, not the BOP, files the motion: "In light of the statutory command that any sentence reduction be 'consistent with applicable policy statements issued by the Sentencing Commission, § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well." (U.S. Sealed Opp'n Def.'s Emergency Mot. for Compassionate Release & Reduction of Sentence Under 18 U.S.C. § 3582(c)(1)(A)(i) ("U.S. Opp'n"), at 8 n.3, ECF No. 40.)

This court has held, in a non-COVID-19 case, that the Policy Statement does not curtail its discretion to determine what circumstances are extraordinary and compelling under § 3582. In United States v. Maumau, this court

> join[ed] the majority of other district courts that have addressed this issue in concluding that it has the discretion to provide Mr. Maumau with relief, even if his situation does not directly fall within the Sentencing Commission's current policy statement. Under the First Step Act, it is for the court, not the Director of the Bureau of Prisons, to determine whether there is an "extraordinary and compelling reason" to reduce a sentence.

---

or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." USSG 1B1.13 Commentary Application Note 1(C).

No. 2:08-cr-758-TC, 2020 WL 806121, *4 (D. Utah Feb. 18, 2020), stayed pending appeal, No. 20-4056 (10th Cir. June 1, 2020). In this and other districts, courts have reached the same conclusion when addressing motions raising COVID-19-related reasons for release.

> Since the onset of the COVID-19 pandemic, many courts "have agreed that [extraordinary and compelling] reasons exist in cases involving defendants whose serious underlying health conditions place them at an elevated risk of infection and death from COVID- 19 while in custody." United States v. Lopez, No. 18-CR-2846 MV, 2020 WL 2489746, at *2 (D.N.M. May 14, 2020) (unpublished). Of the courts that have reached such a conclusion, several "have based their finding on the Sentencing Commission's catch-all provision for 'other' extraordinary and compelling reasons" in the Application Notes. Id. Conversely, other courts have reached this determination based on "a plain reading of § 3582(c)(1)(A) after concluding that the [relevant] policy statement no longer applies." Id. Either way, "a majority of federal district courts have found . . . that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." United States v. Perez, No. 88-10094-1-JTM, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) (unpublished).

United States v. Wadley, No. 2:18-cr-408-DAK, 2020 WL 3270880, at *2 (D. Utah June 17, 2020) (unpublished).

As evidenced below, the only possible outlet for the defendant under the Policy Statement is the "Other Reasons" category, which does not provide any measurable criteria. Consequently, regardless of whether the court follows the Policy Statement or simply looks to the statute, the analysis of the "extraordinary and compelling reasons" prong is essentially the same.

## ANALYSIS

Mr. Clark has the burden to establish that he is entitled to a sentence reduction under § 3582. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Jackson, — F. Supp. 3d —, No. 1:19-cr-347 (TNM), 2020 WL 3402391, *2 (D.D.C. June 19, 2020), appeal filed, No. 20-3046; United States v. Holroyd, — F. Supp. 3d —, No. 1:17-cr-234-2 (TNM), 2020 WL 2735664, *2 (D.D.C. May 26, 2020), appeal filed, No. 20-3041. For the

reasons set forth below, the court finds that although Mr. Clark has established an extraordinary and compelling reason for sentence reduction, the balancing of the § 3142(g) and § 3553(a) factors weighs in favor of his continued incarceration.

1. **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

On April 15, 2020, Mr. Clark submitted a request for release to the Warden of FCI Safford where he is housed, and, as of the date he filed the motion—June 19, 2020—he had not received a response. (See Ex. A to Def.'s Mot. Compassionate Release, ECF No. 71-1; Def.'s Mot. Compassionate Release ("Def.'s Mot.) at 3, ECF No. 71.) Because more than thirty days have passed without response from the BOP, Mr. Clark has satisfied the exhaustion requirement.

2. **EXTRAORDINARY AND COMPELLING REASONS**

In Mr. Clark's motion, he describes his chronic medical conditions, asserting that he "is particularly vulnerable to the COVID-19 disease, and should he become infected with the novel coronavirus, faces a very high likelihood of death or permanent bodily injury." (Def.'s Mot. at 1.) As for the chance that he will catch the virus, he points out that some people at FCI Safford, where he lives, have tested positive for the virus, that the infection rate will inevitably rise at the facility, and that living and working conditions do not allow the prisoners to follow safety measures necessary to avoid infection.

To begin, the court finds that the existence of the pandemic is not by itself an extraordinary and compelling reason for release, and that the existence of infections in the facility where the defendant is incarcerated, without more, is also not a sufficient reason. But if the defendant is at risk for severe illness or death if he contracts the virus, that is an extraordinary and compelling reason under the statute. The United States reaches the same conclusion: "If an inmate has a chronic medical condition that has been identified by the CDC as elevating the

inmate's risk of becoming seriously ill from COVID-19, that condition satisfies the standard of 'extraordinary and compelling reasons.'" (U.S. Opp'n at 12 (footnote citation omitted).)

According to the CDC, older adults and people with certain underlying medical conditions are at increased risk for severe illness, or even death.[5] The older the person, the greater the risk.[6] "In fact, 8 out of 10 COVID-19 deaths reported in the U.S. have been in adults 65 years and older."[7] In addition, a person of any age definitely has an increased risk of severe illness if he has one or more of following CDC-identified chronic conditions:[8] cancer; chronic kidney disease; COPD (chronic obstructive pulmonary disease); immunocompromised state from a solid organ transplant; obesity (a body mass index (BMI) of 30 or higher); serious heart conditions such as heart failure, coronary artery disease, or cardiomyopathies; sickle cell disease; and type 2 diabetes mellitus.[9] Finally, the CDC has determined that the following chronic conditions *might* put a person at higher risk: asthma, hypertension (high blood pressure), type 1 diabetes mellitus, and pulmonary fibrosis (damaged or scarred lung tissues).[10]

Mr. Clark asserts that he suffers from a series of the above-listed chronic conditions which consequently make him especially vulnerable to serious complications if he is infected with the coronavirus. According to Mr. Clark, who is 53 years old, he has radiation fibrosis (a

---

[5] CDC, CORONAVIRUS DISEASE 2019 (COVID-19), *People Who Are At Increased Risk For Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last modified June 25, 2020).
[6] CDC, CORONAVIRUS DISEASE 2019 (COVID-19), *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Aug. 16, 2020).
[7] Id.
[8] CDC, CORONAVIRUS DISEASE 2019 (COVID-19), *People With Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 14, 2020).
[9] Id.
[10] Id.

scarring of lung tissue),[11] is pre-diabetic, has a heart murmur, suffers from high cholesterol and high blood pressure, and is obese.

Some of these conditions are either undocumented or do not put him in a high-risk category. The medical records do not show a diagnosis of radiation fibrosis and do not refer to any complaints of lung or breathing issues. There is no evidence that Mr. Clark is pre-diabetic.[12] And even if he were, pre-diabetes is not on the CDC's list, nor is it equivalent to Type-1 or Type-2 diabetes, which are on the CDC's list. As for his documented heart murmur, the United States plausibly contends that it is "not severe enough to quality as a serious heart condition like heart failure or coronary artery disease." (U.S. Opp'n at 13.) Lastly, Mr. Clark's high cholesterol is not an underlying condition highlighted by the CDC.

But the medical records support Mr. Clark's claim that he suffers from two high-risk conditions: hypertension (high blood pressure) and obesity.[13] Unfortunately, Mr. Clark discussed these conditions for the first time in his Reply brief, so the United States did not have a fair chance to address that part of Mr. Clark's argument. Still, the record provided by the United States supports Mr. Clark's assertion that he suffers from both, and there can be no real dispute that Mr. Clark's obesity and high blood pressure put him in the category of high-risk patients identified by the CDC. Accordingly, because Mr. Clark falls within that category, he has established an extraordinary and compelling reason for a sentence reduction.

---

[11] When he was seventeen-years-old, Mr. Clark was treated for a "'giant cell tumor' near the thoracic region of his spine." (Def.'s Mot. at 11.) Radiation therapy "scarred his lung tissue, a condition called radiation fibrosis." (Id.)

[12] As the United States points out, the result of Mr. Clark's March 2020 blood test shows otherwise. (See U.S. Opp'n at 12, ECF No. 74; Ex. D to U.S. Opp'n at 41–42, ECF No. 74-4.)

[13] The United States says that Mr. Clark's conditions are being treated and managed well. But nothing in the CDC information suggests that a person whose medical condition is being managed by medication is less at risk of a severe illness due to the virus.

3. **CONSIDERATION OF FACTORS IN 18 U.S.C. §§ 3142 AND 3553**

Even though Mr. Clark has established an extraordinary and compelling reason under the first prong of the analysis, the court finds that Mr. Clark poses a danger to the community and that other factors in 18 U.S.C. § 3553(a) weigh against his release.

In 2011, Mr. Clark was indicted for production of child pornography (Count 1) and possession of child pornography (Count 2). The disturbing circumstances of his crime are described in detail in the United States' sealed opposition to Mr. Clark's motion for release. (See U.S. Opp'n at 14–15.) In 2012, he pled guilty to Count 1, and in 2013 the court sentenced him to fifteen years in prison followed by a ten-year period of supervised release. At sentencing, the court recommended that he participate in sex offender treatment.

Mr. Clark has served seven years of his sentence. Even accounting for an early release date based on good behavior, he estimates he has five more years to serve before starting his ten-year supervised release period. (See Def.'s Reply in Support of Mot. Compassionate Relief ("Def.'s Reply") at 5, ECF No. 76.)

He asks for a reduction of his sentence to time served, or, alternatively, an order releasing him to home confinement. Now, having evaluated the factors set forth in 18 U.S.C. § 3142(g) and 18 U.S.C. § 3553(a), the court determines he is not entitled to either.

The Policy Statement says that a finding of extraordinary and compelling reasons for release must be accompanied by a finding that the defendant "is not a danger to the safety of any other person or community, as provided in 18 U.S.C. § 3142(g)" and that the balance of the § 3553(a) factors weighs in favor of release. USSG 1B1.13(2). Some of the relevant factors set out in 18 U.S.C. § 3142(g) include "the nature and circumstances of the offense charged, including whether the offense … involves a minor victim"; the history and characteristics of the

defendant such as his mental condition, past conduct, family ties and community ties; and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

The statute mandates a similar approach, requiring the court to analyze the request by considering the factors in 18 U.S.C. § 3142(g) (listed above) and balancing the factors in 18 U.S.C. § 3553(a). The § 3553(a) factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed –
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established … in the guidelines …;
(5) any pertinent policy statement … issued by the Sentencing Commission …;
(6) the need to avoid unwarranted sentence disparities among defendant with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)-(7).

To begin, Mr. Clerk's suggested reduction is not justified by the circumstances. Mr. Clark was sentenced to the mandatory minimum for the one crime he admitted: a fifteen-year prison term and ten years of supervised released. The lengthy sentence reflected the serious nature of the criminal conduct charged. Yet he has served only seven of those years. Even if the remainder of his term is five years rather than eight years, as he suggests based on the BOP's calculation of his release date, a new sentence reduced to time served does not reflect the

seriousness of the offense.

Additionally, the court finds that Mr. Clark would pose an unacceptable danger to the community if released. The court bases its decision on a number of factors, not the least of which is the nature and circumstances of his sexual crime against two minors in his custody and care. Mr. Clark counters that concern in part by saying that his "offense was an aberration" and that "his crimes were crimes of opportunity." (Def.'s Reply at 4–5.) He concludes that he would not pose a danger because he would not have opportunities to reoffend. Specifically, he says that he would not be living with minor children, that supervised release conditions would restrict his ability to access the Internet and electronic devices, that he would be registered as a sex offender, and that state law would restrict his ability to be around children.

The court is not persuaded. The record does not support his characterization of the crimes.[14] And, given the U.S. Probation Office's limited ability to supervise released offenders during the pandemic, such a watchdog effort is not a satisfying response at this time. But most importantly, Mr. Clark's psychosexual evaluation and lack of sex offender counseling give the court pause.

In the report of Mr. Clark's psychosexual evaluation,[15] the details of which are discussed in the United States' sealed opposition brief, Mr. Clark's responses indicate that if he continues to distort and minimize his actions he will be at higher risk of recidivism.[16] The report then

---

[14] The psychosexual evaluation report sufficiently rebuts Mr. Clark's minimization of his crime.
[15] Ex. C to United States' Opp'n, ECF No. 74-3.
[16] In response to the United States' reliance on the psychosexual evaluation as evidence that he is at risk of reoffending, Mr. Clark contends that "[a]lthough the government emphasizes those parts stating that Mr. Clark was minimizing his actions, it fails to note those parts that state he would be at low risk of reoffending." (Def.'s Reply at 4 n.13.) Mr. Clark is apparently focusing on language in the report briefly citing to two test results. But the author did not place a great deal of weight on the data. (See Sept. 10, 2012 Psychosexual Evaluation at 16, Ex. C to U.S.

11

concludes that without sex offender counseling, Mr. Clark will distort and minimize his actions. In the seven years he has served in prison, he has not completed sex offender counseling. Mr. Clark responds that "it is not clear that Mr. Clark has ever been in the position to take such counseling." (Id. at 4.) Regardless of the reason why, that does not change the fact that he has not completed it, which concerns the court because he asks for release without it. He alternatively suggests that "if such counseling is deemed essential, it certainly can be made a condition of his supervised release." (Id. at 5.) But that possibility does not diminish the fact that in the interim he is more likely to re-offend without counseling. In other words, even though Mr. Clark suggests counseling after release, on the first day of his requested release and continuing through the time he successfully completes counseling, he would pose an unacceptable risk of danger to the community.

      Mr. Clark's reliance on the decision to release him pending trial is not persuasive either. He makes the following argument:

> To decide whether a person is a threat to others or the community, the court is directed [by the statute] to consider the factors it normally considers when deciding whether someone should be detained pretrial [i.e., the factors set forth in 18 U.S.C. § 3142(g)]. Previously, when those same factors were considered in this case [at Mr. Clark's detention hearing], Mr. Clark was determined not to be a danger to others, and was released on his own recognizance. Nevertheless, the government claims that is irrelevant. But it offers no explanation of why, and when the factors are considered, it makes no sense.

(Id. at 3–4 (footnotes omitted).) The court disagrees. At the time Mr. Clark was released (July 13, 2011 (see ECF Nos. 11–12)), he had not pleaded guilty and the psychosexual evaluation was not available (it was issued after Mr. Clark pleaded guilty). And when he was sentenced, the court did not allow him to self-surrender; he was taken into custody that day. (Feb. 11, 2013

---

Opp'n, ECF No. 74-3.) The court finds that the United States has accurately represented the report's conclusion.

Minute Entry of Sentencing, ECF No. 58.) Accordingly, the detention decision carries little weight here. The record now before the court supports a finding that Mr. Clark would pose a danger to the community if released.

Based on that finding, as well as the other factors discussed above, the court declines to grant Mr. Clark the relief he seeks.

## **ORDER**

For the foregoing reasons, Darin Fronk Clark's Motion for Compassionate Release (ECF No. 71) is DENIED.

DATED this  9th  day of September, 2020.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge